IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| DEBRA A. LATCHUM, | ) |
| | ) Case No. 4:07CV00042 |
| Plaintiff, | ) |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) By: Jackson L. Kiser |
| | ) Senior United States District Judge |
| Defendant. | ) |

Before me is the Report and Recommendation ("Report") of the United States Magistrate Judge recommending that Plaintiff's Motion for Summary Judgment be granted and the case remanded to the Commissioner of Social Security's ("Commissioner") for further proceedings. The Commissioner filed objections to the Report. I reviewed the Magistrate Judge's Report, Plaintiff's objections, and relevant portions of the Record. The matter is now ripe for decision. For the reasons stated below, I will REJECT the Magistrate Judge's Report and GRANT Defendant's Motion for Summary Judgment.

I.  STATEMENT OF FACTS AND PROCEDURAL HISTORY

The Magistrate Judge's Report explains the background of this case in sufficient detail, and I need not repeat it here. In short, the Commissioner concluded that Plaintiff was entitled to a closed period of disability which concluded on June 1, 2005. As of that date, the Commissioner determined that Plaintiff had experienced medical improvement and thus was able to perform jobs in significant numbers in the national economy. The bases for the determination of medical improvement were that Plaintiff had surgery on February 15, 2005, that removed a

1

hematoma that had been pressing on the nerve in her back, and subsequently said that "her walking and standing were now fine." (Tr. 26.)

In her Motion for Summary Judgment, Plaintiff raises several issues. Plaintiff claims that the ALJ erred by failing to consider her disabled based solely on the condition of her shoulders, and that the ALJ mischaracterized Dr. Speer's and Dr. Grigoryev's findings in determining the source of her diminished RFC. Plaintiff's shoulder injuries were obviously unaffected by the surgery. Therefore, she urges that the ALJ should have ordered a consultative examination after the February 2005 operation. Lastly, Plaintiff argues that the ALJ's questions to the vocational expert (VE) posed hypotheticals that did not properly recognize Plaintiff's limitations.

In the Defendant's Motion for Summary Judgment, the Commissioner responds that the ALJ was not required to get supporting medical evidence and that the Plaintiff's own statements are sufficient to provide substantial evidence to support the ALJ's determination of medical improvement. The Commissioner also points out that, were the claim of disability based solely on the shoulder issues, it would fall short. Specifically, Plaintiff actually performed light duty work while suffering her shoulder issues until she had her motorcycle accident. That accident caused the hematoma, but did not worsen her shoulders. Therefore, if there were no hematoma and Plaintiff has not demonstrated that her shoulder condition had deteriorated, Plaintiff would be able to continue to perform work.

The Commissioner also contests the suggestion that the ALJ was required to order a consultative examination for the period following the surgery.

In responding to Plaintiff's claim that the questions posed to the VE were insufficient, the Commissioner points out that the VE was present for Plaintiff's discussions of her limitations,

2

and that the VE understood Plaintiff's limitations. Therefore, the Commissioner argues, though a hypothetical may be ambiguous, an ALJ can rely on the VE's response "when it is clear from the record that the VE knew exactly what the individual's limitations were." (D. Br. 18.)

In the Report, the Magistrate Judge noted that because the determination of disability was based on the expertise of Dr. Grigoryev, a decision of medical improvement can not be justified without "reference to that same type of medical expertise." (Report 5.) Instead, the ALJ relied "solely upon plaintiff's subjective statements and reported daily activities to support his opinion." (*Id.*) The Magistrate Judge found this insufficient, as "[t]here was and remains a medical component to the determination of medical improvement in this case that necessitates consultative review." (*Id.*)

In the Objections, the Commissioner argues that Magistrate Judge erred in requiring corresponding medical evidence. Further, Plaintiff failed to submit her post-surgical records, which suggests that the records were not favorable toward her claim of continued disability.

## II.  STANDARD OF REVIEW

Congress limits judicial review of decisions by the Social Security Commissioner. I am required to uphold the decision when: (1) the Commissioner's factual findings are supported by substantial evidence; and (2) the Commissioner applied the proper legal standard. 42 U.S.C. § 405(g) (2003); *see also, Craig v. Chater,* 76 F.3d 585 (4th Cir. 1996). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The Fourth Circuit has further defined substantial evidence as being more than a scintilla but less than a preponderance. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.

3

1966).

The regulations charge the Commissioner of Social Security with evaluating the medical evidence and assessing symptoms, signs, and findings to determine the functional capacity of the claimant. 20 C.F.R. §§ 404.1527-404, 1545 (2006); *Hays v. Sullivan*, 907 F.2d 1453 (4th Cir. 1990); *Shively v. Heckler*, 739 F.2d 987 (4th Cir. 1984). The regulations grant the Commissioner latitude in resolving factual inconsistencies that may arise during the evaluation of the evidence. 20 C.F.R. §§ 404.1527, 416.927. If the ALJ's resolution of the conflicts in the evidence is supported by substantial evidence, then this Court must affirm the Commissioner's final decision. *Laws*, 368 F.2d at 642.

## III.    DISCUSSION

The primary question raised by the Report and Objections is whether a medical report is necessary for a determination of medical improvement where the claimant's subjective statements suggest such medical improvement. "Medical improvement . . . is determined by a comparison of prior and current medical evidence which must show that there have been changes (improvement) in the symptoms, signs or laboratory findings associated with that impairment(s)." 20 C.F.R. § 404.1594(c)(1) (2008). However, this does not state, as the Magistrate Judge suggests, that the medical evidence must be of the same type as was used to make the initial disability determination. A determination of medical improvement "must be based on changes (improvement) in the symptoms, signs and/or laboratory findings." 20 C.F.R. § 404.1594(b)(1). "Symptoms" are the claimant's own description of the physical or mental impairment. 20 C.F.R. § 404.1528(a). They differ from "Signs," which are the physiological abnormalities that are demonstrated by clinical diagnostic techniques. 20 C.F.R. § 404.1528(b).

4

I therefore disagree with the Magistrate Judge's determination that the ALJ was required to order a second CE before making a determination of medical improvement. All that was required was sufficient medical evidence. Here, in a psychiatric office visit report completed on March 17, 2005, approximately one month after the relevant surgery, the doctor noted that due to the surgery, claimant "had a lot of relief of pain in her back and hip. She has been able to get off a lot of her pain medication. She is hopeful that she can go back to work on light duty at Goodyear in the next couple of weeks, but still has some problem with shoulder discomfort." (Tr. 744.) This report demonstrates an improvement in Plaintiff's symptoms, and thus was sufficient for the ALJ to rely on.

The Report only addresses one of Plaintiff's concerns. Several other issues remain. First, Plaintiff complains that the ALJ mischaracterized the findings of Doctors Speer and Grigoryev, and that their determinations were based on a review of Plaintiff's shoulder conditions, which were unaffected by the surgery. Upon review of the record, I do not believe the ALJ erred in this matter. Doctor Grigoryev noted Plaintiff's shoulder and back issues before concluding that she "would be able to stand and walk for not more than 2 hours in an 8 hour day and would be able to sit for not more than 4 hours in an 8 hour day." (Tr. 529.)

Plaintiff asserts that Dr. Grigoryev "did not delineate what caused him to limit plaintiff as he did," (Pl. Br. 4.) and thus it was error for the ALJ to determine that these limitations were decreased by the surgery. I disagree. The back issues were a significant portion of Dr. Grigoryev's assessment. It is completely logical that these issues would have been at least partially remedied by the surgery. As discussed above, this is supported by Plaintiff's own statements regarding her symptoms and further bolstered by the fact that Plaintiff worked up

5

until the time of her back injuries.

>Next, Dr. Speer stated:
>
>She has had a low back injury with sacral ligament and bone injury for the past year. It remains incompletely resolved. The time course of continued resolution is uncertain. For that reason she does not sit well, she certainly cannot lift, push or pull anything. I have recommended her to go on total disability . . . At this point I am discharging the patient. I do not think she needs any further treatment for either shoulder. She needs to be completely disabled and I would support that 100% once I am presented with the paperwork. Dr. Gary Smoot is seeing her for her low back and sacral issues and I have deferred those considerations to Dr. Smoot.

(Tr. 444.)

The ALJ summarized: "In combination with the claimant's back injuries [Dr. Speer] felt that the claimant should go on total disability." (Tr. 28.) Plaintiff assigns error to this analysis, claiming that Dr. Speer was referring only to Plaintiff's shoulder injuries. I disagree. It does appear that Dr. Speer was referring to the combination of maladies in his analysis, especially as the source of her inability to sit, lift, push or pull. Further, this would be supported by the fact that Plaintiff worked up until the motorcycle accident.

Lastly, Plaintiff argues that the hypothetical posed to the VE was insufficient. However, the VE was present for all of Plaintiff's testimony. In fact, the VE was even asked during Plaintiff's testimony whether the VE had any questions about Plaintiff's use of hands or arms and responded "that's pretty clear." (Tr. 798.) It was a bit strange for the ALJ to tell the VE that the VE can ask additional questions of Plaintiff's attorney rather than present a hypothetical. However, this peculiarity does not overcome the reasonable conclusion that the VE had a proper grasp of Plaintiff's physical condition and thus could speak to the jobs available to someone in her condition.

## IV.   CONCLUSION

6

For reasons stated herein, I will REJECT the Magistrate Judge's Report and GRANT Defendant's Motion for Summary Judgment. The Clerk will be directed to send this Opinion and the accompanying Order to all counsel of record, and to DISMISS the case from the docket of this Court.

Entered this 26th day of August, 2008.

        s/Jackson L. Kiser
        Senior United States District Judge